450

## No. 18,736.

### BENEFIT ASSOCIATION OF RAILROAD EMPLOYEES *v.* FOSTER S. WICKHAM.

(351 P. [2d] 385)

Decided April 18, 1960.   Rehearing denied May 9, 1960.

Messrs. DAWSON, NAGEL, SHERMAN & HOWARD, Mr. RAYMOND J. TURNER, for plaintiff in error.

Mr. PHILIP ROSSMAN, for defendant in error.

*In Department.*

Opinion by MR. CHIEF JUSTICE SUTTON.

THE sole question to be determined in this action is whether defendant in error Wickham had properly, within the time required by a health and accident policy, reinstated his policy. Briefly the facts are that Wickham, an employee of the Union Pacific Railroad, was temporarily discharged from employment. Prior to that time he had what is known as family group hospital and medical insurance coverage from his employer, which was paid for by deductions from his pay.

Wickham was temporarily laid off November 24, 1955, and the following April 2nd he was regularly reemployed by the same employer. On May 1st he mailed to the insurance carrier his premium to reinstate the policy. The insurer evidently received this tendered premium within the thirty-one day period hereinafter mentioned, but refused to accept the payment because a provision in Paragraph 10 of the policy provided for premiums to be paid by the employer withholding payment from the employee's wages. Some months later the tender was again made and the policy was reinstated.

In April, after Wickham returned to work, his wife became ill and beginning April 26th incurred certain medical and hospital expenses which are the subject of this suit.

Section 5 of the policy reads:

"(5) DELAYED ACCEPTANCE OF COVERAGE: If a member does not apply for coverage for his dependents within 31 days from the date they become eligible, no payments shall be made for any expense caused by: (1) disease or condition contracted or originating prior to the effective date of coverage or within 31 days thereafter; or (2) herniotomy, tonsillectomy, appendectomy, or any disease or condition of female generative organs

if the expense is incurred within 6 months from the effective date of coverage."

Section 6 provides:

"(6) TERMINATION OF COVERAGE: If an insured is laid off permanently the insurance as to a dependent will automatically terminate at the end of the current insurance month but if disabled or laid off temporarily protection may be kept in full force for a period of six months by the payment, in advance direct to the Association, of the required premium. *If the insurance is lapsed during such lay-off or disability full protection may be reinstated within 6 months by payment of the premium in accordance with the provisions of Paragraph (10) hereof for the first insurance month following the insured's return to active employment.* If an Insured has allowed his protection to lapse for reason other than disability or temporary layoff *or if he fails to apply for reinstatement of coverage within (31) days after the date of re-employment,* his protection shall be subject to the limitations set forth in Paragraph (5) above. *In any case of reinstatement the protection will be effective the first of the insurance month for which the monthly premium is paid* in accordance with the provisions of Paragraph (10) hereof." (Emphasis supplied.)

Section 10 provides:

"(10) Premiums for this insurance are to be paid by means of the Employer withholding from the wages of the insured employe on orders drawn by such employe, payable to the Association, *or payable by such insured employe direct to the Association under the conditions specified in paragraph (6) hereof.* Such deductions are to be made only from the last half calendar month's earnings and will cover the premium only for the following insurance month." (Emphasis supplied.)

Reading the above three sections together, which proper construction requires, it appears that:

1. Wickham could reinstate his policy within six

months after being temporarily laid off. He could do this by payment of the premium in the manner required during "the first insurance month following the insured's return to active employment."

2. On the other hand if Wickham had allowed his protection to lapse "for reason other than disability or temporary lay-off" or if he had failed "to apply for reinstatement coverage within (31) days after the date of re-employment" then his protection was limited as set forth in section 5. Since his policy did lapse because of temporary lay-off and he did apply for reinstatement within 31 days after his re-employment, it is apparent nothing in section 5 bars full coverage.

3. Since section 10 provides that when payroll deductions are made they cover only insurance for the "following insurance month" it is obvious that to give effect to all of section 6 the employee would have the right and duty to make direct payments in order to obtain the coverage expressly provided in the wording which reads "In any case of reinstatement the protection will be effective the first of the insurance month for which the monthly premium is paid * * * ."

In this connection we also note that section 10 provides for continuing and reinstatement payments to be "payable by such insured employee direct to the Association under the conditions specified in paragraph 6 hereof."

This record discloses that Wickham within the thirty-one day period tendered his payment as required for reinstatement and that the tender was made within six months after he was temporarily laid off. Thus, under the policy's provision, the reinstated insurance related back to the date of his first re-employment in April and covers the claim in question.

In order to recover upon a reinstated lapsed policy the insured must show that he has either been reinstated before the claim arose or that he has done all that was required by the policy to entitle him to

reinstatement. *Brun v. Sup. Council American Legion of Honor* (1900), 15 Colo. App. 538, 63 Pac. 796. Here Wickham has met this test.

It is also urged as error that the trial court erred in mathematically computing the maximum amount recoverable under the terms of the policy. It is asserted that only $432.40 of the loss could be covered under the certificate which limits the surgical expense for a gallbladder operation to $150.00, the hospital bill to an admitted $282.40. In this the plaintiff in error is correct and the judgment must be reduced accordingly.

The judgment is affirmed in part and reversed in part with directions to the trial court to enter judgment in accordance with this opinion.

MR. JUSTICE MOORE and MR. JUSTICE KNAUSS concur.